FILED

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

02 AUG -8 PM 3: 25

| | |
|---|---|
| **PATRICIA SANDOVAL,**<br>**Plaintiff,**<br><br>v.<br><br>**SMALL SMILES DENTAL CLINIC,**<br>**and MELVIN TAKAKI and**<br>**EDDIE DEROSE, Individually,**<br><br>**Defendants.** | CASE NO._____<br><br>**CIV-02-0983 DJS**/WWD<br><br>Civil Complaint pursuant to<br>Title VII of the Civil Rights<br>Act 42 USC § 2000e et seq.<br>Pendent State Claims. A jury<br>is requested. |

## COMPLAINT

Plaintiff, pro se for her complaint STATES:

### GENERAL ALLEGATIONS

1. This action arises under Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, 42 USC §2000e, et seq., the New Mexico Human Rights Act and New Mexico Common Law.

2. Plaintiff was employed with Small Smiles Dental Clinic as a dental assistant from August 2000 until October 2000 when she was constructively discharged and upon information and belief, is a partnership owned by Melvin Takaki and Eddie De Rose.

3. Upon information and belief Takaki and De Rose are residents of the City of Santa Fe County Santa Fe, State of New Mexico.

4. Plaintiff's immediate supervisors were Dr. Melvin Takaki and Dr. Eddie DeRose, partners in the Small Smiles Dental Clinic.

5. Small Smiles Dental Clinic employs a minimum of 15 employees and is an employer within the meaning of Title VII and New Mexico Human Rights Act. (NMHRA).

6. All pre conditions of jurisdiction Under Title VII, 42 USC § 2000 3-5(f)(3) and the NMHRA, have been satisfied.

7. In August 2000, Plaintiff began her first month of employment in the Defendant's Albuquerque clinic fulfilling training for the position of dental assistant. She was transferred to employer's Santa Fe office, which was still under construction, at the beginning of September 2000. Immediately after her transfer, Plaintiff began to experience sexual harassment from Dr. Takaki and Dr. DeRose.

## COUNT I

## SEXUAL HARASSMENT

8. During the beginning of September 2000, Plaintiff and her co-workers met for lunch with both Dr. Takaki and Dr. DeRose. During that lunch, Dr. Takaki rubbed himself inappropriately on Plaintiff and rested his hand on her shoulder.

9. Plaintiff also began to notice that Dr. DeRose was consistently staring at her. When she caught him looking at her, he would smile and wink. These actions made Plaintiff feel increasingly uncomfortable in his presence, and she tried to avoid contact with the doctor.

10. Plaintiff endured several inappropriate actions from Dr. Takaki and Dr. DeRose following these incidents. On several occasions when walking through the clinic

2

with either of the doctors, the doctors would grab her waist, arm or hand as they walked with her.

11.  Toward the beginning of September, Plaintiff witnessed Dr. DeRose giving a co-worker, Rose Maez, around $150.00. When she tried to return it, he winked and stated that it was an extra bonus implying that it was in exchange for sexual favors.

12.  Plaintiff was made to feel increasingly more uncomfortable toward the end of September 2000 as the sexual harassment had already created a hostile work environment. On one occasion Dr. DeRose related a story about one of his patients, stating that "the mother was very well endowed" and he misspoke, telling her that her child's "two top tits" needed to be filled.

13.  Dr. DeRose began calling Plaintiff "my little clumsy one" or "baby" after he witnessed her trip and spill coffee. He would then hold onto her belt loops as she vacuumed, stating "I'd better hold on to you." He also stood behind Plaintiff as she scrubbed floors, and Plaintiff caught him staring at her on these occasions.

14.  Plaintiff witnessed harassment of her co-workers during this time as well, including pinching or slapping of the employees in inappropriate places and inappropriate, or lewd, comments.

15.  Plaintiff reported the above instances of sexual harassment to the head dental assistant, Anna Abefeya, toward the end of September 2000. In response, Ms. Abefeya called all the women, including Plaintiff, into a meeting. During the meeting Ms. Abefeya requested that the women not dress "sexy" in front of the dentists. No further action was taken by the employer to resolve the problems reported by Plaintiff.

16. Toward the beginning of October 2000, Plaintiff was fixing a chair and needed a screw for that purpose. When she asked Dr. DeRose for one, he referred to one of the construction workers, saying, "Ask him." "I hear he's the best screw in town."

17. Dr. Takaki continued to grab Plaintiff or give her hugs. In addition, he would stand behind Plaintiff with his hand on her stomach when he spoke to her.

18. All of the physical contact descried above was unwelcomed and due to the increased sexual harassment, and lack of response from the employer in stopping the sexual harassment, Plaintiff ended her employment at the end of October 2000.

19. As a result of the above, Plaintiff was constructively discharged and had suffered a loss of pay and benefit, please emotional distress in an amount to be determined at trial.

WHEREFORE, Plaintiff requests Judgement against the Defendants under Count II in an amount to be determined at trial.

## COUNT II

### ASSAULT AND BATTERY

20. Plaintiff incorporates by reference each of the preceding paragraphs as though fully restated herein.

21. The physical contact occurring between Takaki and Plaintiff constituted harmful or offensive touching resulting in emotional distress or fear of further offensive touching so that damages are appropriate.

22. The physical contact occurring between Dr. DeRose and Plaintiff constituted harmful or offensive touching resulting in emotional distress or fear of further offensive touching so that damages are appropriate.

4

WHEREFORE, Plaintiff requests Judgement against the Defendants under Count II in an amount to be determined at trial.

## COUNT III

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

23. Plaintiff incorporates each of the preceding allegations as though fully restated herein.

24. The aforementioned acts by Defendants constitute conduct, which exceeds all bounds usually tolerated by a decent society.

25. The aforementioned acts by Defendants were of a nature calculated to cause and did cause Plaintiff mental distress of a very serious kind.

26. As a result, Plaintiff has suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiff requests Judgement against the Defendants, jointly and severally, under Count III in an amount to be determined at trial.

### JURY DEMAND

A jury of 12 persons is requested.

Respectfully Submitted,

*Patricia Sandoval*
Patricia Sandoval
Pro Se
1299 Zepol #68
Santa Fe, NM  87505
(505) 424-4649